May peace court. I'm Tanya Morrow. I'm representing Mr. Donoghue, a habeas petitioner who proceeded as a pro se litigant in the state proceedings and who we've argued has not has not failed to exhaust his claims because he was a pro se petitioner and because the exhaustion doctrine is not supposed to be a trap. We have argued that his claims are in fact a trap. We have argued that his claims should be reviewed on the merits by the district court. Could we review his claims on the merits? I'm sorry? Could we review his claims on the merits? I believe you can. Can you tell what they are? Of course I can, yes. I'm having difficulty telling what they are from you. You want to talk about the merits? Well, I'm just saying if you've got, we probably want to talk about exhaustion, but I, this, I must tell you, this looks to me like a case where if the district court had taken up his claims on the merits, it would have denied habeas relief. And I'm trying to figure out whether we should just short circuit the procedural aspects of this and go right to the bottom line. Okay. Well, of course, we didn't do a lot of briefing on the merits in the brief, but I'll try to explain to you. Maybe you can start by pointing to us, because I had trouble figuring out what they were, pointing to, and this speaks to the underlying procedural issue, too, pointing to us where they are articulated by your client. So that's more of the procedural issue as far as whether you're... It helps us figure out what, if there are claims in there that ought to be evaluated, we don't have a fresh piece of paper here. You can't come up with what might be attacked today. We are limited, at least, to what was exhausted. So I'd like to figure out, without maybe resolving the exhaustion issue, what claims we have to start with. Certainly. What claims did he file in his habeas petition? There were two, I'm sorry, oh... Those would be the ones... There were two depositors issue trial court error claims. One was the denial of his motion for judgment of acquittal. He argued that the state did not meet the element with regard to reckless behavior in the state. So he has a Jackson claim. He has a Jackson v. Virginia claim. The second one was due process with regard to the court's instruction to the jury when the jury asked the question regarding the application of the recklessness standard to the manslaughter count as well. Same sort of error occurred by the trial court when the trial court failed to, in response to that question, clarify that recklessness with regard to manslaughter required the state to prove that the defendant caused the death of the decedent. And so the evidence in the case was... You don't have to argue for a second. We're just trying to identify what the claims were because it's relevant to... And he set those out... Question issue. Sure. And he set those out. I forget what the numbers were offhand. But in his assignments of errors as number six and number... One second. I believe this is in page 14 of the court of appeals brief. Number six and number 13 in his supplemental appellate brief in the... In the Oregon court of appeals. In the Oregon court of appeals on direct appeal. Can I ask you this, counsel? You know, we are occasionally very solicitous of the concerns of pro se folks. And we get lots and lots and lots of pro se habeas petitions. But can you cite to me any case where because somebody is pro se and simply don't comply with state procedural rules such as here, that we have in effect waived the procedural default? Well, I don't know if a specific case exists other than Slack v. McDaniels that we've cited and Sanders v. Ryder. But those are a bit different. They're a bit different. But what's important here is that to the federal exhaustion involves what the state requirement, what the state pleading requirements are. And this court asked, you know, the court of appeals, I mean, excuse me, the Supreme Court of Oregon what its requirements were in Farmer. And the Supreme Court of Oregon said we have this different standard when it comes to pro se petitioners. Well, aren't they talking about petitions for review? Having served on a state Supreme Court, I know courts want petitions for review to be very short. No, I believe that the discussion in Farmer, and we argued it, is broader than just the petitions for review. Well, is it? I mean, have we, is there any case that's held since then that the Farmer ruling applies to appeals, direct appeals in the Oregon court of appeals? Well, not in the Oregon court of appeals. Judge Brown here in the District of Oregon has, in the context of an exhaustion question, applied the Farmer rule with regard to pro se petitions in the court of appeals. So she's decided that it's not just related to Balfour types of situations. It also applies to when petitioners are operating, well, in most cases, like in Mr. Donahue's case, he was, he filed a pro se petition because his attorneys in the direct appeal didn't file the claims that he wanted. And the rule allows that. I asked a slightly different question. Okay. And I appreciated the supplemental citation to that. My question is, have any of the Oregon courts ever, in writing, said this Farmer doctrine applies to direct appeals? You know, that's not a review that I did in the last few days, unfortunately, and thus far I have not seen that. I would like to have an opportunity to provide a brief letter to the Court if I find anything this next week. Let me be square about my problem. Farmer suggests that we cut some slack for a pro se party. That's not the same as saying there's no tension in the line whatsoever. And I think the problem identified here in what the Oregon Court of Appeals said, it simply didn't respond to your client's submission saying that we don't have the assignments of error that sufficiently identify what's the beef, and so we're not going to decide. Well, okay. What's wrong with that statement? I mean, are you challenging that as a factual proposition? Are you challenging that as a legal proposition or both? Both. Okay. So let's start with the factual. Where did your client sufficiently identify the claim? What we have argued is the Court of Appeals was specific as to which provisions of a very long rule it was applying. Okay? The State now is arguing that two other provisions is what the Court of Appeals had decided barred the claims. But in our case, what we're saying is that they were really specific, that they failed to comply with the format and preservation requirements of the rule. And we've argued that that really means setting forth what the issues and the rulings were that the defendant wanted to raise. And he did that. He did it by actually citing and quoting the court's decision. That's what you've argued, but that's not what they're ruling. You're still not answering my question. I'm sorry. I want you to point me, take me in the record. So if I'm sitting there as a, I don't know if they're called judges or justices, a judicial officer of the Oregon Court of Appeal, how am I supposed to discern these claims from the paper that was filed? If we look on, well, we look back to the brief page 12 and 14. I would like to reserve some time to Your Honors, but I will try to respond. And maybe what you can do is if you're just trying to identify the record, let us know when you get back up. Okay. Well, it's on page 14 of the brief. Again, I'm quoting his claim 6. What? 14 of the opening brief. The one you filed in this court? Yes. Okay. Yes, sir. I was trying to find something from the record. Does your brief tell me where it is in the record? Yes, it does. Okay. It's at ER 41 and 42. And so we've quoted it. And he says, motion for acquittal. The state failed to provide any evidence that a weapon was used and I was not using self-defense or that I was acting recklessly. And acting recklessly was an issue raised below. And he quotes then his attorney's objection. And then he also quotes the court's response. And that's assignment of error number 6. So he's identified for the court what the issues and the rulings were, which is what that preservation portion of Rule 5.45 requires. The state now is arguing, well, and for the first time now, arguing that the Court of Appeals barred the claim because he didn't set forth the statement of review, standard of review, or any argument. But that's not what the Court of Appeals said. The Court of Appeals limited its decision on the bar to the limits that the state made with regard to its claim below. The state characterized the statement or the assignments not meeting that particular standard, but then went on to argue, well, and we also don't like the fact that he didn't provide any standards of review or argument, but they didn't call that a rule violation. And it's probably because the state knows that in Oregon, the standards for presentation are reduced if you're a pro se petitioner under 5.92. And that rule applies, and it should apply with regard to the federal court reviewing how claims are presented. If the state says they're presented sufficiently that way, then they should be for federal review. Thank you. Thank you. Good morning. May it please the Court. Cecil Renish Smith on behalf of Superintendent Jeff Primo. I have some answers to the Court's questions, and I'm sure the Court also has questions for me. But before we get started, I want to make sure that the Court is very clear on kind of how this case progressed from below. And we're actually talking about two different occasions of procedural default on petitioners' claims related to error in his criminal trial and the claims of ineffective assistance of counsel presented in the post-conviction. What procedural defaults did the district court find? The two procedural defaults were that for the claims related to his criminal trial, which were the Jackson, Virginia claim and the Sixth Amendment claim related to the answer to the jury question, the district court found that those were procedurally defaulted because the Oregon State Court of Appeals had refused to reach the merits to the extent those claims had been presented. The Oregon Court of Appeals refused to reach them on an independent and adequate state procedural rule. That's the rule at issue in front of us today. That's the rule at issue. That's what the argument to date so far has been about. And with respect to his IAC claims? With respect to his IAC claims, what the district court found was that they had not been fairly presented, or in other words, exhausted, because they were distinctly different from the claims that Petitioner had taken through the appellate process in the Oregon State Courts. And as I understood it this morning, and maybe I put too much weight on what opposing counsel said, I didn't hear her saying that they were pursuing the IAC claim in the district court, but perhaps they still are. Okay. Go ahead. My understanding is that the habeas petition contained 42-some claims, but only seven were actually briefed and argued in the district court. Two of those were the ones related to the criminal trial. Counsel, can I be sure I understand what you said a minute ago? Because that obviously bears on what we're talking about here. It seems like the state is conceding that for purposes of our discussion, let's assume that he did comply with the state rule about specificity and what had to be there. The reality is Judge Brown concluded that even if it had been properly presented, the court refused to consider the merits, and therefore it's not exhausted. Is that the argument? Or did I misunderstand you? I don't believe that's the argument. The way I understand the argument to be is, and to be honest, this is not how I understood it to be in the briefing. But what I understand Petitioner's argument to be is that. She's saying something different. I'm trying to understand what you're saying. I thought you said that Judge Brown basically said, in effect, let's assume for a minute that he had properly presented this. They didn't consider the merits, therefore it's not exhausted. That's not what you're saying then. And now I'm confused because this is a decision by Judge Simon. I want to get back to that in a second. But Petitioner was talking about a decision by Judge Brown in another case in which Judge Brown had determined that the attachment provisions of Farmer v. Baldwin applied to non-Balfour brief cases. That has to do with the second area of procedural default. Okay. So that's not this case. Well, that decision is not this case. Judge Brown isn't this case. Judge Simon is this case. Correct. The issue of whether the attachment rule announced by the Oregon Supreme Court in Farmer v. Baldwin applies beyond the Balfour arena is part of this case. What's your position on that? My position on that is that the decision in Farmer v. Baldwin is a very narrow decision that applies only to the Balfour-type cases. The Oregon Supreme Court is very careful to say over and over again. It reiterates its holding about three times in the case, and each time it's very careful to say in a Balfour-type case. Does it apply beyond petitions for review to the Oregon Supreme Court? Does it apply to appeals to the Oregon Court of Appeals? We do not have an answer to that question yet. But you're asking us to come up with one, so tell me what you think it is. My position is that it does not. Now we're back to Judge Brown. She thinks it does. Right. In one decision, it's my understanding that this has come up several times with the opposite result, Judge Simon's being one of them. Yes. So we have a conflict in the District of Oregon. At the District of Oregon, yes. But what do we, Judge Brown, make a reasonable case, that the Farmer Rule ought to apply in the context of direct appeals in a non-Balfour situation? What do you think? I disagree with Judge Brown's determination. Do we have to reach that issue in this case? I think we do. I'm not sure. See, the problem with this case, and I think I'm getting close to the end, but you really need to think, understand what is happening in a Balfour case and why that attachment rule was promulgated. And that's because Balfour-type appeals are a very special kind of appeal where you have a court-appointed attorney who has reviewed the record and determined that there are no meritorious claims. And the court-appointed attorney would want to withdraw because I can't, you know, ethically file a brief that is frivolous. And what the Oregon Supreme Court came up with, drawing on Supreme Court decisions in Anders v. California and a few other cases, was this process where you have a Part A brief that is filed by the attorney that lays out all the facts of the case, everything that happened below, and then says, I couldn't find a meritorious claim, therefore I'm ending here, and I have given my client the opportunity to file what we call a Part B, which is where the client gets to say whatever the client wants to say about why his conviction should be reversed. And what the Supreme Court in Farmer determined was that when you get these kind of Balfour briefs under Oregon appellate rules, and this is also drawing from Anders, the court at that point has an independent obligation to look at the record itself to determine if it sees any meritorious claims. Sotomayor, stop for a second, and that's very helpful. If this were a Balfour situation in the court of appeals, if this were, there was a Part A brief and a Part B brief, would the Part B brief be able to incorporate by reference? Yes, but this is where it gets tricky. It seems to be tricky all along. Right. Trickier. It is, and to be honest, when this court started out, Judge Clifton, you were asking what are the claims. I still am not entirely sure what all the claims were because mercurial is the best word I can come up with this, because every time I try to pin it down, it seems to be something different. But at his criminal appeal, he was represented by counsel. Counsel did identify a meritorious claim. You're saying there are no Balfour appeals in the PCR context. In the PCR context, yes, there can be. And if that were the case, if this had been a Balfour case, then we'd still have to kind of look at how it was presented. But you're saying it doesn't apply if it's simply a pro se appeal as opposed to Balfour. Right. And this is another thing to keep in mind is he was appealing pro se in the PCR. He had the same page limitation requirements that any other appellant has. It wasn't limited to five pages like his supplemental brief in the direct appeal was. He actually filed a brief in the PCR that made eight assignments of error. He then attached the documents, including what he refers to as the 96-page brief, but said that he was designating the record with those. What that, on my reading, appears to be is that was his excerpt of record. Here's my brief, here's my excerpt of record, because that's what the briefs in the court of appeals look like.  So there's no reason for the appellate court to understand if he hasn't explicitly stated in the brief that he actually filed that had assignments of error that, oh, and I want to incorporate all the claims that I made in this brief that I've attached. So under those circumstances, should the court of appeals address the assignments of error in the brief, but not the incorporated ones, or address none? Well, in the PCR, what the court of appeals did was affirm without opinion, which is what the court of appeals does most often when it affirms a judgment. And so we don't know if the court affirmed on the merits of the eight assignments of error that were in the brief, or said that even those eight assignments of error did not meet the rule. But we do know that the district court thought there was a procedural default. Yes. There was a procedural default because the PCR, we're talking about the PCR claims at this point. That brief included eight specific assignments of error related to the PCR proceedings. I know the district court found that, but given that the district court affirmed without opinion, and there was a brief, why shouldn't we assume that the district court, the district court, the court of appeals, sorry, disposed of this case on the merits? Right. Oh, we can. The problem is, is that the claims that Petitioner made in his habeas petition were not those eight assignments of error that he made in his PCR brief. So, sure. But there's no discourage to what you've identified as being analogous to an excerpt of record in order to get to those claims. The court had to have understood, to get to those claims, the court would have had to have understood that these documents that he was designating as record, and that's what he called it, were actually additional argument and claims that he wanted to incorporate into his brief. This is helpful. Let me ask you one more question because I was a little confused about this. Is it fair to say that none of the habeas claims are among the eight that you consider exhausted? It is fair to say that. Because, again, I'm reading the assignments of error and the habeas petition. I have some of the same difficulties Judge Clifton has. I'm not sure what's being claimed where and when. Right. And that really is kind of the root problem in this case, is that the claims have consistently shifted. And so ---- A foolish consistency is the hobgoblin of little minds. Yes. There's actually more to that quote, and I wish I remembered it because it's kind of ---- Anyway, I am well beyond my time. Unless the Court has any other questions, I would rest on my brief. We appreciate the assistance. Thank you. And we'll have rebuttal. I won't take up too much of your time. I will address the second issue, though, regarding the ineffective assistance to counsel claims real quickly. In his claim, assignment of error number three, he talks about preserving, during his PCR trial, all of his claims in my 96-page brief, which was attached to the petition. So specifically in one of those assignment of errors, of the eight that was listed, he talks about those claims that were attached. So if you look at the Gladwell case, which is Judge Brown's case, that type of language is sufficient enough under that ruling and under Farmer to incorporate all of those claims. And it was two or three of the 96 claims that had to do with counsel's failure, trial counsel and appellate counsel's failure, with regard to the same two issues related to the direct appeal claims. And in the State's response, in the Court of Appeals post-conviction case, the State says, in his amended petition for post-conviction, which is where he attached the 96 brief, okay, his amended petition which attached the 96-page brief, the petitioner claims inadequate assistance in many particulars, many of which were unclear. This is at ER 211. Then the State quotes the trial court's decision and essentially says that the Can I ask you one question here? You cited Jackson. There are other cases. By my lights, the dates on which these procedural defaults occurred were July 13, 2007, and the date of Jackson was in 2009. Wynn was 2008. Medford was 2014. In other words, all subsequent to the date of the alleged default. Are you talking about the adequate State cases that we raised on adequacy? Yes. So I guess my question is, what impact, if any, do those cases have on how we should view this case? In other words, the exculpatory language, if you want to call it that, in Jackson, didn't exist at that time. Is it retroactive? And if so, in what way? I guess I'm confused as to which Jackson case. But to the extent you're talking about our cases that we've cited that show that the Court of Appeals is not That it has been selectively applied. Selectively applied, the rule. Yeah. I guess the question is the fact that we didn't cite anything prior to 2005. This case was decided, the Court of Appeals decided the direct appeal case in 2008. So there's an answer there. To the extent that there was at least I thought it was July 13, 2007. My understanding was 2008 was the Court of Appeals' final decision in the case. I know you wouldn't take long. So you said you wouldn't take long. But let me keep you here one second longer. As I read Judge Brown's opinion, it is in a case where the appeal was counseled, but the defendant wanted to file a supplemental brief. Is that right? Right. And that's why we think, you know, her persuasiveness applies to the context of our direct appeal issue, which is our first issue. And that's because she recognizes, and I think we all should, that the pro se supplemental brief rule Oregon adopted is for the same policy that we have about for a rule. Because the State understands the limitations of our judicial system and understands that there are some petitioners in the direct appeal context that think their direct appeal attorneys aren't raising all the issues that should be raised. So this gives them an opportunity to raise those issues. And as a practical matter, the State of Oregon has resolved this issue, I believe, in favor of the defendants getting their right of review in federal court. The Oregon Supreme Court understands the limitations of our system, and that's why we have these pro se rules. And the State has indicated that it does not intend our rules and our presentation requirements to be a trap for purposes of federal review. Thank you. Well, but the court of appeals specifically said it wasn't going to entertain the supplemental brief. It did. It did, based on the State's argument. And that question could have been raised to the Oregon Supreme Court, but nothing successful from the defendant's perspective, your client's perspective, came from either of the Oregon courts. So the federal court has what appears to be a rejection by the Oregon courts of consideration of these questions. But we've argued that the rule that was applied was not adequate because it's not been consistently applied. And beyond that, the specific rule that the court of appeals applied, he complied with. And then thirdly, the reason that he couldn't comply was he was not an attorney. He could not winnow his claims. He didn't know how to. So he threw them all in the best that he could. Those claims were there. The State responded to them. The State, you know, submitted a brief on the merits with regard to those two claims, the judgment of acquittal and the jury instruction issue. Thank you. Thank you. We thank both counsel for your helpful arguments in this confusing context. The case just argued is submitted.
judges: Clifton, Smith, Hurwitz